**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

MAVJIBHAI B. LAKHANI

     Plaintiff,                    Case No.
                                         Hon.

v.

RELIANCE RUBBER INDUSTRIES, INC.,     **Jury Trial Demanded**
GORDHAN N. AKBARI,
MANJULA G. AKBARI,
NAGJI J. SUTARIYA, and
ASHWIN PATEL

     Defendants.

# <u>VERIFIED COMPLAINT</u>

     NOW COMES Plaintiff, MAVJIBHAI B. LAKHANI, by and through counsel, and by way of complaint against the Defendants, states as follows:

### <u>Jurisdiction and Venue</u>

1. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) as the amount in controversy is in excess of Seventy Five Thousand Dollars ($75,000) and there is complete diversity of citizenship between Plaintiff and Defendants.

2. Venue is proper under 28 U.S.C. § 1391(b) as all Defendants reside in the Eastern District of Michigan and a substantial part of the underlying claim took place in the Eastern District of Michigan.

## The Parties

3. Plaintiff Mavjibhai B. Lakhani is a resident of the State of Illinois. Plaintiff is the current Treasurer of Reliance Rubber Ind., Inc., a member of the Board of Directors and a shareholder.[1]

4. Defendant Reliance Rubber Industries, Inc., is a Domestic Profit Corporation incorporated in the State of Michigan on August 9, 1990, Corporation Identification Number 532-160. The registered office of the corporation is located at 38230 Executive Drive N., Westland, Michigan 48185. The registered agent of the corporation is Defendant Gordhan Akbari.

5. Defendant Gordhan Akbari is a resident of the State of Michigan. Defendant Akbari is the current President of Reliance Rubber Ind., Inc., member of the Board of Directors, registered agent and shareholder.

6. Defendant Nagji Sutariya is a resident of the State of Michigan. Defendant Sutariya is the current Secretary of Reliance Rubber Ind., Inc., a member of the Board of Directors and shareholder.

7. Defendant Manjula Akbari is a resident of the State of Michigan and the wife of Defendant Gordon Akbari. Defendant Manjula is purportedly a shareholder of Reliance Rubber Ind., Inc.

8. Defendant Ashwin Patel is a resident of the State of Michigan. Defendant Patel is the current Vice President of Reliance Rubber Ind., Inc., a member of the Board of Directors and shareholder.

## Statement of Facts

---

[1] At times during this matter, Plaintiff Mavjibhai Lakhani was represented by his son, Vipul Lakhani, as his agent with power of attorney. In this Complaint, for clarity, any actions taken by Vipul Lakhani on behalf of his father Mavjibhai Lakhani are stated as though taken by Mavjibhai Lakhani himself.

9. Reliance Rubber Industries, Inc. was incorporated on August 9, 1990, for the purpose of conducting business under the Business Corporation Act of Michigan. Specifically, the company manufactures and provides rubber and silicone extrusions, tubes, hoses and special moldings.

10. On September 1, 1990, the company held its initial meeting of incorporators. At that meeting, Plaintiff, Bharat Dungrani and Defendants Gordhan Akbari and Nagji Sutariya were elected to the Board of Directors.

11. At this meeting, the Board of Directors approved the bylaws governing the running of the corporation.

12. At this meeting, the Board of Directors also approved the Buy-Sell Agreement governing the purchase and sale of Capital Stock of the corporation.

13. At the Board meeting, Four Thousand (4,000) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Bharat Dungrani in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

14. Two Thousand Five Hundred (2,500) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Gordhan Akbari in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

15. One Thousand (1,000) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Nagji Sutariya in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

16. Two Thousand Five Hundred (2,500) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Plaintiff in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

17. The First Board of Directors Meeting Minutes, dated September 1, 1990, duly noted and recorded the correct issuance and distribution of the Ten Thousand (10,000) shares of Capital Stock.

18. After about six months of operation, Reliance Rubber Industries, Inc. was in need of additional capital.

19. Accordingly, the Board of Directors decided to issue Three Thousand (3,000) additional shares.

20. On March 16, 1991, One Thousand Two Hundred (1,200) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Bharat Dungrani in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

21. Seven Hundred Fifty (750) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Plaintiff in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

22. Seven Hundred Fifty (750) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Gordhan Akbari in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

23. Three Hundred (300) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Nagji Sutariya in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

24. The Minutes of the Board of Directors' meeting, dated March 16, 1991, duly noted and recorded the correct issuance of Capital Stock to the Plaintiff, Bharat Dungrani and Defendants Akbari and Sutariya.

25. As of March 16, 1991, there were Thirteen Thousand (13,000) shares of Capital Stock of Reliance Rubber outstanding disturbed as follows: Five Thousand Two Hundred (5,200) shares held by Bharat Dungrani; Three Thousand Two Hundred Fifty (3,250) shares held by Gordhan Akbari; One Thousand Three Hundred (1,300) shares held by Nagji Sutariya; and Three Thousand Two Hundred Fifty (3,250) shares held by Plaintiff.

26. On or about June 25, 1991, Reliance Rubber, Ind., Inc. again issued an additional Three Thousand (3,000) shares of Capital Stock at $10.00 per share to raise capital.

27. One Thousand Two Hundred (1,200) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Bharat Dungrani in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

28. Seven Hundred and Fifty (750) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Gordhan Akbari in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

29. Three Hundred (300) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Defendant Nagji Sutariya in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

30. Seven Hundred and Fifty (750) shares of Capital Stock of Reliance Rubber Industries, Inc. were duly issued to Plaintiff in accordance with the bylaws and Buy-Sell Agreement of Reliance Rubber.

31. After the issuance of Capital Stock on or about June 25, 1991, the total outstanding shares of Reliance Rubber Industries, Inc. were Sixteen Thousand (16,000) shares: Six Thousand Four Hundred (6,400) shares held by Bharat Dungrani, Four Thousand (4,000) shares held

by Defendant Gordhan Akbari, One Thousand Six Hundred (1,600) shares held by Defendant Nagji Sutariya, and Four Thousand (4,000) shares held by Plaintiff.

32. Also, at this time, Bharat Dungrani, Defendant Akbari, Defendant Sutariya and Plaintiff were each in possession of three certificates of Capital Stock, representing the initial investment on September 1, 1990, the first capital raise on March 23, 1991, and the second capital raise on or about June 25, 1991.

33. To consolidate certificates, each of the directors surrendered their multiple certificates for the re-issuance of a single, consolidated certificate.

34. Specifically, as of June 31, 1991, there should have been four (4) certificates, totaling Sixteen Thousand (16,000) shares, of outstanding Capital Stock of Reliance Rubber, Ind., Inc., apportioned as follows:

   a. Bharat Dungrani was issued a certificate for Six Thousand Four Hundred (6,400) shares of Capital Stock.

   b. Defendant Gordhan Akbari was issued a certificate for Four Thousand (4,000) shares of Capital Stock.

   c. Defendant Nagji Sutariya was issued a certificate for One Thousand Six Hundred (1,600) shares of Capital Stock.

   d. Plaintiff was issued a certificate for Four Thousand (4,000) shares of Capital Stock.

35. During the year 1994, there was tension between Bharat Dungrani, the President of the company, and Defendant Gordhan Akbari.

36. On or around August 31, 1994, Bharat Dungrani decided to sell his shares and step down as the President.

37. On August 31, 1994, a special joint meeting of the Board of Directors and shareholders was held regarding Bharat Dungrani's offer to sell his Six Thousand Four Hundred (6,400) shares of Capital Stock back to the corporation.

38. Dungrani's offer to sell his shares back to the corporation was rejected by the Board.

39. However, the Board approved the sale of Dungrani's shares to Dinesh Tejani, Defendant Gordhan Akbari and Plaintiff in the following amounts: Four Thousand (4,000) shares to Dinesh Tejani; One Thousand (1,200) shares to Defendant Gordhan Akbari; and One Thousand (1,200) shares to Plaintiff.

40. Dinesh Tejani was brought in as an investor-shareholder and was assigned to run the sales and marketing division of the corporation.

41. Upon resignation of Bharat Dungrani and his exit from the corporation, Defendant Gordhan Akbari was elected as the President of the corporation.

42. Thereafter, business of the corporation proceeded as usual through 1997.

43. Similar to tensions between Dungrani and Defendant Gordhan Akbari, tensions brewed between Tejani and Defendant Akbari.

44. In or around June of 1997, Tejani decided to sell his shares and exit the corporation.

45. On June 16, 1997, a special meeting of the Board of Directors was called to discuss the proposed sale of Dinesh Tejani's shares of Capital Stock.

46. The Board approved the following transaction:

    a. The corporation would purchase the Four Thousand (4,000) shares for a price of $45.00 per share.

    b. The corporation would sell Three Thousand Eight Hundred Forty (3,840) shares of Capital Stock to Ashwin Patel at $45.00 per share.

    c.  The corporation would sell the balance of One Hundred Sixty (160) shares to Gordhan Akbari at $45.00 per share.

    d.  The corporation also approved the transfer of Two Hundred Forty (240) shares of Capital Stock from Plaintiff to Gordhan Akbari.

47. After this June 16, 1997 share purchase, re-purchase and transfer transaction, Reliance Rubber Industries, Inc. still had a total of Sixteen Thousand (16,000) outstanding shares, distributed as follows: Plaintiff held Four Thousand Nine Hundred Sixty (4,960) shares, Defendant Gordhan Akbari held Five Thousand Six Hundred (5,600) shares, Defendant Nagji Sutariya held One Thousand Six Hundred (1,600) shares and Defendant Ashwin Patel held Three Thousand Eight Hundred Forty (3,840) shares.

48. This composition of the shares and respective holdings of the parties has not changed and Reliance Rubber Industries, Inc.'s corporate books should reflect these share holdings.

49. Since June 16, 1997, Defendant Ashwin Patel has been employed with Reliance Rubber, Industries, Inc. as Vice President.

50. In or around May of 1998, Defendant Ashwin Patel discovered that Defendant Gordhan Akbari, the President of Reliance Rubber Industries, Inc., had misappropriated company's funds and had purchased gold for his personal use using the corporate credit card.

51. Defendant Ashwin Patel confronted Defendant Gordhan Akbari about this unauthorized expense.

52. Plaintiff also confronted Defendant Gordhan Akbari about this unauthorized expense.

53. After being confronted by Plaintiff and Defendant Ashwin Patel, Defendant Gordhan Akbari was forced to reimburse the corporation for the purchase of gold.

54. Similar to the tension between Bharat Dungrani and Defendant Gordhan Akbari and between Dinesh Tejani and Akbari, upon Defendant Ashwin Patel's confrontation of Defendant Gordhan Akbari for misappropriation of corporate resources for personal use, tensions began to brew between these two Defendants.

55. Defendant Gordhan Akbari repeatedly tried to discredit Defendant Ashwin Patel's standing and/or role in the corporation.

56. Defendant Gordhan Akbari, as the President of the corporation, also stopped the corporation from paying dividends to the shareholders.

57. Historically, the corporation paid out quarterly dividends to the shareholders. Defendant Gordhan Akbari stopped paying dividends in 2015. For instance, in January, May, June and October of 2014, Plaintiff received dividend checks.

58. While Plaintiff received a full dividend check in January of 2015, he received a reduced check in April of 2015 and he has not received his dividend check for the third or fourth quarters per the historic payment schedule.

59. As a member of the Board of Directors, shareholder and Treasurer of the corporation (per the 2003 State of Michigan Profit Corporation Update), Plaintiff has received no information about reduced profits, delayed distribution, corporate reinvestment or any other reason which would cause failure to pay quarterly dividends.

60. On or about May of 2015, upon information and belief, Defendant Ashwin Patel arrived to work and was apparently intoxicated.

61. Defendant Gordhan Akbari, acting as the President of Reliance Rubber Industries, Inc., terminated Defendant Ashwin Patel.

62. Given that Defendant Patel had once discovered Defendant Gordhan Akbari misappropriating corporate funds for personal use, Plaintiff believed Defendant Patel's termination was retaliatory and requested a more moderate and/or different sanction.

63. Accordingly, Plaintiff called for a Board meeting to discuss Defendant Gordhan Akbari's decision.

64. A Board of Directors meeting was held on July 31, 2015.

65. Plaintiff (through his Power of Attorney holder, Vipul Lakhani) attended the meeting along with his attorney Linda Mayer. Defendant Ashwin Patel was in attendance. Defendant Reliance Rubber Industries, Inc. was purportedly represented by Attorney Dennis Harris. Defendant Nagji Sutariya was represented by his Power of Attorney holder Raj Sutariya. Defendants Gordhan and Manjula Akbari attended the meeting as well.

66. At this meeting, Plaintiff was informed that Defendant Ashwin Patel was not only terminated from his position as an employee / officer of the corporation but also as per the Buy-Sell Agreement of the corporation, he was required to surrender his shares of Capital Stock to the corporation at book value.

67. At this meeting, Plaintiff was informed that Defendant Manjula Akbari was a shareholder in the corporation.

68. At this meeting, Plaintiff was informed that Defendant Manjula Akbari was also a director and had a seat on the Board of Directors of the corporation.

69. At this meeting, Plaintiff was provided with photocopies of "share certificates." "minutes" of the board meetings that were allegedly held, an "Amendment" to the bylaws, and other documents.

70. No original documents were produced or provided by the Defendants at this Board meeting.

71. Plaintiff was informed that the decision to terminate Defendant Ashwin Patel's employment with the corporation could not be overturned.

72. Plaintiff was informed that Plaintiff, together with Defendant Ashwin Patel, no longer had the majority shareholding in the corporation.

73. Plaintiff was informed that the "Amendment" to the Bylaws now required a "Super Majority" of ninety-two (92) percent votes in order to make any changes to the corporation's bylaws.

74. The photocopies of share certificates and other documents presented by Defendants Manjula Akbari and Nagji Sutariya at the July 31, 2015 board meeting are fabricated and fraudulent.

75. These fabricated and fraudulent documents present a distorted, false and fraudulent picture of the corporation, its shareholders, its directors and its resolutions.

76. A review and analysis of the fabricated and fraudulent documents presented at the July 31, 2015 board meeting reveal that the following phantom events allegedly transpired.

77. On or about March 21, 1991, Reliance Rubber purported to have a special joint meeting of Board of Directors and Shareholders of Reliance Rubber, Ind. Inc. and prepared the corresponding minutes.

78. The minutes state that Bharat Dungrani offered to sell Two Thousand Eighty (2,080) shares of Capital Stock to Reliance Rubber, Ind., Inc. at the price of $10.00 (Ten Dollars) per share. The minutes state that the purchase of shares by the corporation was approved.

79. The minutes state that Defendant Gordhan Akbari offered to sell Three Thousand Two Hundred and Fifty (3,250) shares of Capital Stock to Reliance Rubber, Ind., Inc. at the price of $10.00 (Ten Dollars) per share. The minutes state that the purchase of shares by the corporation was approved.

80. The minutes state that Defendant Manjula Akbari, wife of Defendant Gordhan Akbari, was elected as the Secretary.

81. The minutes state that Bharat Dungrani was elected to Vice President, Treasurer and Chairman of the Board for Reliance Rubber, Ind. Inc.

82. The minutes are a fraudulent document.

83. Upon information and belief, it was prepared by the Defendants Gordhan Akbari, Manjula Akbari, and/or Nagji Sutariya. Specifically:

   a. No special joint meeting was called in accordance with the laws of the corporation.

   b. Neither Dungrani nor Akbari offered to sell their shares of Capital Stock to the corporation on March 21, 1991.

   c. The sale of Two Thousand Eighty (2080) shares of Capital Stock from Bharat Dungrani to Nagji Sutariya was not authorized or approved. The purported sale of stock is inconsistent with Dungrani's purchase of the same stock a mere five (5) days prior.

   d. The sale of Three Thousand Two Hundred and Fifty (3,250) shares of Capital Stock from Defendant Gordhan Akbari to Defendant Manjula Akbari was neither authorized nor approved.

   e. Defendant Manjula Akbari was never elected as the Secretary in accordance with the bylaws of Reliance Rubber.

-12-

      f.   Bharat Dungrani was not removed as President and elected Vice President, Treasurer, and Chairman of the Board.

84. On or about June 21, 1991, Reliance Rubber purported to have a special joint meeting of Board of Directors and Shareholders of Reliance Rubber, Ind. Inc. and prepared the corresponding minutes.

85. The minutes state that Bharat Dungrani offered to sell Three Thousand One Hundred and Twenty (3,120) shares of Capital Stock to Reliance Rubber, Ind., Inc. at the price of $10.00 (Ten Dollars) per share.

86. The minutes state that the purchase of Dungrani's shares by the corporation was rejected, but the corporation approved the sale of these shares to Defendant Nagji Sutariya.

87. The minutes state that the corporation received the resignation of President Bharat Dungrani.

88. The minutes are signed by Defendant Nagji Sutariya as Secretary.

89. The minutes are a fraudulent document.

90. Upon information and belief, the minutes were prepared by Defendants Gordhan Akbari, Manjula Akbari, and/or Nagji Sutariya. Specifically:

      a.   No special joint meeting was called in accordance with the laws of the corporation.

      b.   The sale of Three Thousand One Hundred and Twenty (3,120) shares of Capital Stock from Bharat Dungrani to Nagji Sutariya was neither authorized nor approved.

      c.   The signature of Defendant Nagji Sutariya as Secretary of the corporation is inconsistent with the alleged election of Defendant Manjula Akbari as Secretary on March 21, 1991.

91. The falsity of the minutes is further evidenced when compared to the annual reports filed by Reliance Rubber, Inc., Inc. for the years 1991, 1992, 1993 and 1994.

92. All of these documents are signed by Bharat Dungrani as President of the corporation.

93. In addition to fabricating minutes of the phantom board meetings that never took place, Defendants Gordhan Akbari, Manjula Akbari and/or Nagji Sutariya have fabricated Share Certificates to allege issue and/or transfer to shares that never took place.

94. For instance, the actual issuance of Capital Stock on or about June 25, 1991, should be reflected in Share Certificates Nos. 9 through 12. However, the copies of certificates produced during the July 31, 2015 board meeting reveal that the Certificates have been falsified. Specifically:

   a. Certificate No. 9 purports to be an issuance of Three Thousand One Hundred Twenty (3,120) shares of Capital Stock to Bharat Dungrani on March 23, 1991. This issuance never happened in accordance with the laws of the corporation.

   b. Certificate No. 10 purports to be an issuance of Three Thousand Two Hundred and Fifty (3,250) shares of Capital Stock to Defendant Manjula Akbari on March 23, 1991. This issuance never happened in accordance with the laws of the corporation.

   c. Certificate No. 11 purports to be an issuance of Two Thousand Eighty (2,080) shares of Capital Stock to Defendant Nagji Sutariya on March 23, 1991. This issuance never happened in accordance with the laws of the corporation.

   d. Certificate No. 12 purports to be an issuance of Three Thousand One Hundred Twenty (3,120) shares of Capital Stock to Defendant Nagji Sutariya on June 24, 1991. This issuance never happened in accordance with the laws of the corporation.

95. The re-issuance of certificates after the June 25, 1991 capital raise should be reflected in Certificate Nos. 13 through 16. However, the copies of certificates obtained from the corporation reveal that the documents have been falsified. Specifically:

    a. Certificate No. 13 purports to be an issuance of Seven Hundred Fifty (750) shares of Capital Stock to Plaintiff on June 25, 1991. While the issuance did happen in that amount on that date, Certificate No. 13 is a falsified document as the certificate number is incorrect.

    b. Certificate No. 14 purports to be an issuance of Seven Hundred Fifty (750) shares of Capital Stock to Defendant Manjula G. Akbari on June 25, 1991. This issuance never happened in accordance with the laws of the corporation.

    c. Certificate No. 15 purports to be an issuance of One Thousand Five Hundred (1,500) shares of Capital Stock to Defendant Nagji Sutariya on June 25, 1991. This issuance never happened in accordance with the laws of the corporation.

    d. Certificate No. 16 purports to be the re-issuance of Six Thousand Four Hundred (6,400) shares of Capital Stock to Bharat Dungrani. While the re-issuance did happen in that amount, Certificate No. 16 is a falsified document as the certificate number is incorrect.

96. A review of the fabricated and fraudulent Share Certificates and minutes of the board meetings also reveal glaring inconsistencies in the events that allegedly transpired per the Defendants.

97. For instance, on July 16, 1994, Bharat Dungrani purportedly offered to sell Six Thousand Four Hundred (6,400) shares of Capital Stock to the corporation. This offer is

demonstrative of the falsified certificates and meeting minutes created by the Defendants. Specifically:

    a.   On September 1, 1990, Bharat Dungrani was issued Certificate No. 1 for Four Thousand (4,000) shares of Capital Stock. These shares were purportedly surrendered on March 23, 1991 for re-issue. The surrender did not happen and there is no certificate dated March 23, 1991, indicating a re-issue of shares.

    b.   On March 23, 1991, Bharat Dungrani was issued Certificate No. 5 for One Thousand Two Hundred (1,200) shares of Capital Stock. These shares were purportedly surrendered on March 23, 1991 for re-issue. This surrender did not happen and there is no certificate dated March 23, 1991, indicating a re-issue of shares.

    c.   Certificate No. 9, dated March 23, 1991, purports to be an issuance of Three Thousand One Hundred Twenty (3,120) shares of Capital Stock. Bharat Dungrani did not purchase these additional shares. Alternatively, Certificate No. 9 cannot hypothetically represent the consolidation of Certificate Nos. 1 and 5 because the value does not add up.

    d.   Additionally, issuance of Certificate No. 9 is inconsistent with Bharat Dungrani's purported sale of Two Thousand Eighty (2,080) shares of Capital Stock to Defendant Nagji Sutariya on March 21, 1991, per the falsified meeting minutes.

98.  According to the falsified stock certificates provided by the corporation, as of July 16, 1994, Bharat Dungrani owned Eight Thousand Three Hundred Twenty (8,320) shares of Capital Stock. When the falsified meeting minutes and purported sale to Defendant Nagji Sutariya are included, Bharat Dungrani purportedly owned Six Thousand Two Hundred

Forty (6,240) shares. Neither calculation is consistent with Bharat Dungrani's actual ownership as of July 16, 1994.

99. Again, the purchase and issuance of certificates arising from the August 31, 1994, meeting minutes should have been reflected in Certificate Nos. 17 through 19. However, the copies of certificates obtained from the corporation reveal that the documents have been falsified. Specifically:

    a. Certificate No. 17 purports to be an issuance of Four Thousand (4,000) shares of Capital Stock to Defendant Gordhan Akbari on September 18, 1991. This issuance never happened in accordance with the laws of the corporation.

    b. Certificate No. 18 purports to be an issuance of Three Hundred (300) shares of Capital Stock to Defendant Nagji Sutariya on September 18, 1991. This issuance never happened in accordance with the laws of the corporation.

    c. Certificate No. 19 purports to be an issuance of Four Thousand (4,000) shares of Capital Stock to Dinesh and Surekha Tejani. This certificate could be accurate as the certificate number, date and time appear to be consistent with the issuance of the Capital Stock.

100. Further, the collateral events that actually took place and have been duly recorded clash with the phantom events that allegedly took place per the Defendants.

101. For instance, on September 1, 1994, Bharat Dungrani offered his resignation as President of the corporation. The resignation was accepted by the other members of the Board of Directors and Defendant Gordhan Akbari was elected President. This record – that accurately reflects that Bharat Dungrani was acting as President up through September 1, 1994 – is inconsistent with the falsified meeting minutes from March 21, 1991 (wherein

Dungrani was purportedly demoted to "Vice President", "Treasurer" and "Chairman" of the Board) and June 21, 1991 (wherein Dungrani purportedly, previously resigned as the President).

102.    Further, the purchase and issuance of certificates arising from the June 16, 1997, meeting minutes should have been reflected in Certificate Nos. 20 through 24. However, the copies of certificates obtained from the corporation reveal that several of the documents have been falsified. Specifically:

a.    Certificate No. 20 purports to be an issuance of One Thousand Two Hundred (1,200) shares of Capital Stock to Plaintiff on September 1, 1994. While the amount and date of the issuance is correct, the certificate number is incorrect and falsified.

b.    Certificate No. 21 purports to be an issuance of One Thousand Two Hundred (1,200) shares of Capital Stock to Defendants Gordhan and Manjula Akbari on September 1, 1994. This issuance is inconsistent with the June 16, 1997, meeting minutes which state that Certificate No. 21 should be an issuance of Four Thousand (4,000) shares of Capital Stock to Dinesh Tejani. Moreover, while the amount and date of the issuance is correct, the certificate number and shareholders have been falsified.

c.    Certificate No. 22 is the issuance of Three Thousand Eight Hundred Forty (3,840) shares of Capital Stock to Defendant Ashwin Patel. Certificate No. 22 is accurate and correct.

d.    Defendants Manjula Akbari and Nagji Sutariya did not provide a copy of Certificate No. 23 at the July 31, 2015 board meeting.

e.  Certificate No. 24 is the issuance of Nine Hundred Sixty (960) shares of Capital Stock to Plaintiff, which reflects his surrender of his September 1, 1994 Certificate less the amount transferred to Defendant Gordhan Akbari. Certificate No. 24 is accurate and correct.

103.     On June 16, 1997, the shareholders also purportedly signed an Amendment to *Bylaws of Reliance Rubber Industries, Inc. Dated September 1, 1990*. The Amendment purportedly imposed the requirement of a Supermajority Vote of ninety-two percent (92%) to take specified enumerated actions, including the removal or termination of the President (who at that time was Defendant Gordhan Akbari). This is a false and fraudulent document that was never signed or agreed to by the Plaintiff.

104.     There has been no issuance of any additional certificates for Shares of Capital stock after Certificate No. 24 on June 16, 1997.

105.     The Annual Reports filed by Reliance Rubber Industries, Inc. also contradict the series of events as alleged by the fabricated and fraudulent documents produced by Defendants Gordhan Akbari, Manjula Akbari and/or Nagji Sutariya.

106.     The 1992 Annual Report correctly states that as of March 9, 1992, the corporation had $160,000 in shareholder equity represented by common stock. This is representative of the Sixteen Thousand (16,000) total shares of Capital Stock issued by the corporation on September 1, 1990 (Ten Thousand (10,000) shares), March 23, 1991 (Three Thousand (3,000) shares), and June 25, 1991 (Three Thousand (3,000) shares) at $10.00 (Ten Dollars) per share.

107.     When the copies of Share Certificates produced at the July 31, 2015 board meeting are reviewed and compared with the Annual Report, the certificates falsely indicate that

there were Twenty Thousand (20,000) shares of Capital Stock issued by the corporation outstanding as of March 9, 1992.

108.     The 1993 Annual Report correctly states that as of March 8, 1993, the corporation had $160,000 in shareholder equity represented by common stock. This is representative of the Sixteen Thousand (16,000) shares of Capital Stock issued by the corporation on September 1, 1990 (Ten Thousand (10,000) shares), March 23, 1991 (Three Thousand (3,000) shares), and June 25, 1991 (Three Thousand (3,000) shares) at $10.00 (Ten Dollars) per share.

109.     When the copies of Share Certificates produced at the July 31, 2015 board meeting are reviewed and compared with the Annual Report, the certificates falsely indicate that there were Twenty Thousand (20,000) shares of Capital Stock issued by the corporation outstanding as of March 8, 1993.

110.     The 1994 Annual Report correctly states that as of May 15, 1994, the corporation had $160,000 in shareholder equity represented by common stock. This is representative of the Sixteen Thousand (16,000) shares of Capital Stock issued by the corporation on September 1, 1990 (Ten Thousand (10,000) shares), March 23, 1991 (Three Thousand (3,000) shares), and June 25, 1991 (Three Thousand (3,000) shares) at $10.00 (Ten Dollars) per share.

111.     When the copies of Share Certificates produced at the July 31, 2015 board meeting are reviewed and compared with the Annual Report, the certificates falsely indicate that there were Twenty Thousand (20,000) shares of Capital Stock issued by the corporation outstanding as of May 15, 1994.

112.     In addition to the Annual Reports filed by the corporation, Schedules K-1 and Forms 1120S also contradict the alleged events that transpired per the Defendants' fabricated and fraudulent documents.

113.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2008. The Schedule K-1 states the individual shareholder's percentage of stock ownership for the tax year. The 2008 K-1 is a true and accurate statement of the division of corporate ownership. In 2008, the Schedule K-1 specifically states:

    a.   Gordhan Akbari owns Thirty Five Percent (35%) of the corporation.

    b.   Ashwin Patel owns Twenty Four Percent (24%) of the corporation.

    c.   Plaintiff owns Thirty One Percent (31%) of the corporation.

    d.   Nagji Sutariya owns Ten Percent (10%) of the corporation.

114.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2009. The Schedule K-1 regarding ownership interest is identical to that of the previous year.

115.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2010. The Schedule K-1 regarding ownership interest is identical to that of the previous year.

116.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2011. The Schedule K-1 regarding ownership interest is identical to that of the previous year.

117.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2012. The Schedule K-1 regarding ownership interest is identical to that of the previous year.

118.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2013. The Schedule K-1 regarding ownership interest is identical to that of the previous year.

119.     Reliance Rubber Ind., Inc. filed a Schedule K-1, Form 1120S, for 2014. The Schedule K-1 falsely states that Defendant Manjula Akbari owns Thirty Five Percent

(35%) of the corporation. The Schedule K-1 also fraudulently removes Defendant Gordhan Akbari as a shareholder. No shareholder surrendered any certificates of Capital Stock between 2013 and 2014. No new shares of Capital Stock were issued. No transfers of shares were approved.

120.     Furthermore, the correct distribution of ownership reflected in the Schedule K-1 for 2014 is grossly inconsistent with the distribution calculated when examining the false and fraudulent certificates of ownership produced by the corporation. Specifically, a review of Certificate Nos. 1-24 provided by the corporation, dated September 1, 1990 through June 16, 1997, wrongly states that there are Twenty Thousand (20,000) shares of Capital Stock. When the specific percentages of shareholder interest is calculated using the certificates provided by the corporation, none of the ownership percentages match up to the federally filed K-1 Schedules. Specifically, the corporate certificates indicate:

    a.   Gordhan Akbari holds Twenty Eight Percent (28%).

    b.   Manjula Akbari holds Twenty Percent (20%).

    c.   Plaintiff holds Twenty Four and Eight Tenths Percent (24.8%).

    d.   Ashwin Patel holds Nineteen and Two Tenths Percent (19.2%).

    e.   Nagji Sutaryia holds Eight Percent (8%)

121.     Apart from creation of false and fraudulent documents, there are also concerns about Defendants Gordhan Akbari, Manjula Akbari and/or Nagji Sutariya attempting to misappropriate Reliance Rubber Industries, Inc.'s resources and/or business opportunities.

122.     On June 25, 2007, Defendant Gordhan Akbari incorporated a domestic limited liability company named Reliance Group of Hotels, LLC.

123.     Plaintiff was never informed about Defendant Akbari's incorporation of this business with a name similar to Reliance Rubber Industries, Inc.

124.     On September 6, 2007, Reliance Group of Hotels purchased property in the State of Ohio for $4.18 million.

125.     On May 5, 2015, Reliance Group of Hotels sold the same property for $1.856 million.

126.     On November 15, 2011, Defendant Manjula Akbari incorporated a domestic profit company named Reliance Rubber Company, Inc.

127.     Again, Plaintiff was never informed about Defendant Akbari's incorporation of this business with a name similar to Reliance Rubber Industries, Inc.

128.     Pursuant to the K-1 Schedule for 2014, Plaintiff and Defendant Ashwin Patel owned Fifty Five Percent (55%) and should have been able to veto Defendant Gordhan Akbari's termination of Defendant Patel.

129.     Instead, Defendant Gordhan Akbari, Manjula Akbari and/or Nagji Sutariya fabricated fraudulent share certificates, corporate books and meeting minutes to claim that Plaintiff and Defendant Ashwin Patel only held a Forty Four Percent (44%) ownership interest and therefore could not prevent Defendant Patel's termination.

130.     Plaintiff's ownership and financial interests in Reliance Rubber Industries, Inc. have been severely and negatively damaged due to the actions of the Defendants.

## COUNT I – SHAREHOLDER OPPRESSION

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

131.     Paragraphs 1 through 130 are hereby incorporated by reference as if fully set forth herein.

132.     The Defendants engaged in illegal, fraudulent, willfully unfair or oppressive behavior designed to dilute the Plaintiff's voting rights and percentage of shareholder ownership.

133.     Specifically, the Defendants manipulated and/or created falsified certificates of Capital Stock to generate an additional, fictitious Four Thousand (4,000) shares of Capital Stock to dilute the Plaintiff's ownership percentage.

134.     The Twenty Thousand (20,000) shares of Capital Stock purportedly issued by the corporation are inconsistent with both state and federal filings. For instance, the Schedule K-1 reflects the proper distribution of the corporation's Sixteen Thousand (16,000) shares of Capital Stock.

135.     The Defendants have wrongfully exercised their inflated voting rights and percentage of control of the company. For instance, Defendant Gordhan Akbari terminated Defendant Ashwin Patel on or about May, 2015. When the termination was put to a vote at a meeting called by the Plaintiff, the Plaintiff and Defendant Ashwin Patel were unable to overturn the termination and seek more moderate sanctions because of the diluted ownership interest.

136.     The oppressive conduct engaged in by the Defendants is contrary to law and has damaged the Plaintiff.

### COUNT II – SHAREHOLDER OPPRESSION

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

137.     Paragraphs 1 through 136 are hereby incorporated by reference as if fully set forth herein.

138.     The Defendants engaged in illegal, fraudulent, willfully unfair or oppressive behavior designed to amend the bylaws of the corporation to create a "Supermajority Vote" requirement.

139.     The Plaintiff never agreed, signed or represented approval for the imposition of a Supermajority Vote requirement for certain corporate actions, purportedly signed on June 16, 1997. The document contained in the corporate record is a falsified document.

140.     There was no approval to amend the bylaws on June 16, 1997 to impose a Supermajority Vote requirement.

141.     Additionally, the purported amendment to the bylaws wrongfully includes a provision that the removal or termination of the President requires a Supermajority Vote approval of Ninety Two Percent (92%) of issued and outstanding stock. Given that Defendant Gordhan Akbari, the President of the corporation, legitimately holds a Thirty Five Percent (35%) ownership interest, it would be impossible to vote to remove him as President without his approval and consent.

142.     The falsified provision entrenching Defendant Gordhan Akbari as President wrongfully wrests control of the corporation from the remaining shareholders, as it precludes his termination (but for with his consent) and permits him to retain his ownership of any shares of Capital Stock under any scenario.

143.     The oppressive conduct engaged in by the Defendants is contrary to law and has damaged the Plaintiff.

## COUNT III – SHAREHOLDER OPPRESSION

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

144.     Paragraphs 1 through 143 are hereby incorporated by reference as if fully set forth herein.

145.     The Defendants engaged in illegal, fraudulent, willfully unfair or oppressive behavior by failing to pay out dividends to the shareholders of the corporation despite the financial ability to do so.

146.     Historically, the corporation has paid out quarterly dividends to the shareholders of the corporation. In 2014, the Plaintiff received quarterly payments of Forty Six Thousand Five Hundred Dollars ($46,500).

147.     The Plaintiff has received a reduced dividend payment for the second quarter of 2015, and has not received any dividend payments for the third and fourth quarters of 2015, contrary to the historical payment schedule adhered to by the corporation.

148.     As Treasurer of the corporation, the Plaintiff has no information to suggest a loss of profit or additional expenditures of the corporation that would justify the failure to pay dividends.

149.     The oppressive conduct, manifested as a failure to pay out appropriate, historical dividends is contrary to law and has damaged the Plaintiff.

## COUNT IV – FRAUD & MISREPRESENTATION

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

150.     Paragraphs 1 through 149 are hereby incorporated by reference as if fully set forth herein.

151.     The Defendants have fraudulently and unlawfully falsified corporate documents and records, as evidenced by the signatures of Defendants Gordhan Akbari, Manjula Akbari and Nagji Sutariya on the falsified corporate stock certificates.

152.    The Defendants have fraudulently and unlawfully falsified corporate meeting minutes and amendments to the corporate bylaws, for instance, as evidenced by the purported June 16, 1997 "Supermajority Vote" amendment.

153.    The Defendants have fraudulently and unlawfully falsified resignation statements, for instance, as evidenced by the purported resignation of Bharat Dungrani on June 19, 1991.

154.    The Defendants intentionally made false representations of material facts to the Plaintiff at the July 31, 2015 board meeting.

155.    The Defendants knew, or should have known, that the corporate records were falsified.

156.    The Defendants knew, or should have known, that the Plaintiff would rely on the accuracy of the corporate records when conducting business or voting on the actions of the corporation.

157.    The Defendants representations were false when they were made at the board meeting on July 31, 2015.

158.    The Defendants knew, or should have known, that their representations were false when they were made or they made them recklessly.

159.    The Defendants intended that Plaintiff rely on their representations and their fraudulent documents.

160.    The Plaintiff relied on the Defendants' representations and their fraudulent documents.

161.     The Plaintiff relied on the correct percentage of control of the corporation when calling the meeting to address the purported conduct of Ashwin Patel, only to discover that his ownership percentage was diluted.

162.     The Defendants engaged in fraudulent, unlawful actions which have caused damage to the Plaintiff.

## COUNT V – CIVIL CONSPIRACY

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

163.     Paragraphs 1 through 163 are hereby incorporated by reference as if fully set forth herein.

164.     The Defendants engaged in a concerted action in the course of a conspiracy, specifically, a course of conduct to falsify corporate records, including stock certificates, meeting minutes, resignation letters and other documents. The Defendants did, in fact, commit these unlawful and fraudulent acts.

165.     The conspiracy involved a combination of three or more individuals.

166.     The conspiracy was for the purpose of diluting Plaintiff's ownership interest in the company, entrenching Defendant Gordhan Akbari's position as President, and concealing his assets.

167.     The conspiracy involved fraudulent, unlawful actions contrary to law (including fraud and shareholder oppression) which have caused damage to the Plaintiff.

## COUNT VI – BREACH OF FIDUCIARY DUTY OF CARE

**(As to Defendants Gordhan Akbari, ManjulaAkbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

168.     Paragraphs 1 through 168 are hereby incorporated by reference as if fully set forth herein.

169.     The Defendants, as employees, directors and executives of the corporation, owe a duty of care to the corporation and must exercise reasonable skill, care and judgment in the course of their employment.

170.     The Defendants breached their duty of care to the corporation by falsely and unlawfully recording and/or modifying the corporate stock certificates, meeting minutes and other records.

171.     The breach of duty by the Defendants has damaged the Plaintiff.

## COUNT VII – BREACH OF FIDUCIARY DUTY OF GOOD FAITH

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

172.     Paragraphs 1 through 171 are hereby incorporated by reference as if fully set forth herein.

173.     The Defendants, as employees, directors and executives of the corporation, owe a duty of good faith to the corporation and must exercise reasonable skill, care and judgment in the course of their employment.

174.     The Defendants breached their duty of good faith to the corporation by falsely and unlawfully recording and/or modifying the corporate stock certificates, meeting minutes and other records for the purpose of oppressing the Plaintiff's rights as a shareholder of the corporation and concealing assets of Defendant Gordhan Akbari.

175.     The breach of duty by the Defendants has damaged the Plaintiff.

## COUNT VII – BREACH OF FIDUCIARY DUTY OF LOYALTY

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

176.     Paragraphs 1 through 176 are hereby incorporated by reference as if fully set forth herein.

177.     The Defendants, as employees, directors and executives of the corporation, owe a duty of loyalty and fidelity to the corporation.

178.     The Defendants breached their duty of loyalty to the corporation by falsely and unlawfully recording and/or modifying the corporate stock certificates, meeting minutes and other records.

179.     The Defendants breached their duty of loyalty to the corporation by the incorporation of a near identical corporation, Reliance Rubber Company, Inc., upon information and belief, for the purpose of divesting business opportunities and/or profit from Reliance Rubber Industries, Inc.

180.     The breach of duty by the Defendants has damaged the Plaintiff.

## COUNT VIII – BREACH OF FIDUCIARY DUTY

**(As to Defendant Ashwin Patel)**

181.     Paragraphs 1 through 180 are hereby incorporated by reference as if fully set forth herein.

182.     Defendant Ashwin Patel, as Vice President of the corporation, owed a duty of care to the corporation and must exercise reasonable skill, care and judgment in the course of his employment.

183.	Defendant Patel breached his duty of care by failing to discover, correct or notify the Board of Directors and/or shareholders of the corporation of the falsified stock certificates, meeting minutes and other corporate records.

184.	Defendant Patel further breached his duty of care by appearing at his place of employment intoxicated.

185.	The breach of duty by Defendant Patel has damaged the Plaintiff.

## COUNT IX – EXEMPLARY DAMAGES

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

186.	Paragraphs 1 through 185 are hereby incorporated by reference as if fully set forth herein.

187.	Defendants' representations and actions were made intentionally and maliciously and have caused Plaintiff to suffer humiliation, outrage, and indignation.

## COUNT X – ACCOUNTING

**(As to Defendants Gordhan Akbari, Manjula Akbari, Nagji Sutariya and Reliance Rubber Industries, Inc.)**

188.	Paragraphs 1 through 187 are hereby incorporated by reference as if fully set forth herein.

189.	Defendants have never allowed Plaintiff, even upon request, to view Reliance Rubber Industries, Inc.'s financial reports and other books in violation of Michigan law

other than specific pieces of information created by the Defendants that specifically relate to the Plaintiff.

190.     Defendants have failed and refused to provide full and complete financial information, about Reliance Rubber Industries, Inc. to Plaintiff.

191.     Plaintiff cannot, even with liberal discovery, reasonably be expected to ascertain and determine the accurate status of Reliance Rubber Industries, Inc.'s assets and liabilities due to the creation of fraudulent documents and records by the Defendants without a full accounting.

192.     As a result of the Defendants' actions, Plaintiff has suffered economic injury and is entitled to an accounting in order to make a determination as to the value of his stock and to determine the status of Reliance Rubber Industries, Inc.'s assets and liabilities.

193.     Plaintiff requests that the Court order an accounting of all Reliance Rubber Industries Inc.'s financial information.

## COUNT XI – APPOINTMENT OF RECEIVER

### (As to Defendant Reliance Rubber Industries, Inc.)

194.     Paragraphs 1 through 193 are hereby incorporated by reference as if fully set forth herein.

195.     This Court has the authority to immediately appoint a receiver and to define the receiver's powers and duties.

196.     As set forth in the preceding paragraphs, Defendants are grossly mismanaging Reliance Rubber Industries Inc..

197.     Defendants' actions and/or omissions clearly demonstrate a strong presence of misconduct and/or mismanagement.

198.     In order to protect the value of his stock and to protect Reliance Rubber Industries, Inc. itself from further mismanagement by Defendants, Plaintiff requests that this Court appoint a receiver pursuant to law and define the receiver's powers and duties for the protection of Plaintiff and the corporation.

## Request for Relief

WHEREFORE, the Plaintiff prays this honorable Court grant the following relief:

1. Award damages to the Plaintiff in excess of Seventy-Five Thousand Dollars ($75,000) in economic, emotional and punitive damages against Defendants Gordhan Akbari, Manjula Akbari and/or Nagji J. Sutariya, jointly and severally.

2. Award Exemplary Damages in an amount excess of Seventy-Five Thousand Dollars ($75,000) resulting from Defendants' intentional and malicious actions against Defendants Gordhan Akbari, Manjula Akbari and/or Nagji J. Sutariya, jointly and severally.

3. Award damages to the Plaintiff of not more than Five Thousand Dollars ($5,000) in economic damages against Defendant Ashwin Patel.

4. Issue an Order compelling the corporation to recall and destroy the falsified certificates of Capital Stock and re-issue corrected certificates of Capital Stock that reflect the actual distribution of ownership per the Schedule K-1 values (with any Capital Stock wrongfully issued to Manjula G. Akbari issued to Gordhan Akbari).

5. Issue an Order restraining the corporation from re-issuing any Capital Stock to Manjula G. Akbari.

6. Issue an Order compelling the corporation to void the Amendment to Bylaws of Reliance Rubber, Industries, Inc., Dated September 1, 1990.

7.  Issue an Immediate Interim Order precluding the Defendants from using corporate funds to defend against this Complaint.

8.  Issue an Immediate Interim Order appointing a receiver to oversee the business of the corporation pending this litigation.

9.  Award the Plaintiff interest, costs and attorney fees against Defendants Gordhan Akbari, Manjula Akbari and Nagji J. Sutariya, jointly and severally, incurred in bringing this litigation.

10. Any additional relief as necessary in the interests of fairness and substantial justice.

### <u>Jury Demand</u>

The Plaintiffs hereby demands a trial by jury in this matter except for Counts I through III.

## <u>Verification</u>

I declare that the statements above are true to the best of my information, knowledge, and belief.

_____
Mavjibhai B. Lakhani
Plaintiff

Dated: September 15, 2015

Respectfully submitted,


_____/s/ Ashish S. Joshi_____
Ashish S. Joshi (P66222)
Andrew M. Bossory (P74364)
Attorneys for Plaintiffs
Lorandos Joshi
2400 S. Huron Parkway
Ann Arbor, Michigan 48104
(734) 327-5030
a.joshi@lorandoslaw.com
a.bossory@lorandoslaw.com